## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD CHENAULT<br>        Plaintiff,<br><br>            v.<br><br>CREDIT CORP SOLUTIONS, INC.<br>        Defendant. | Civil Action No. 2:16-cv-5864-LDD |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Plaintiff hereby submits his Opposition to Defendant's Motion for Summary Judgment pursuant to F.R.C.P. 56(b).  Defendant's legal argument that there are no genuine issues of material fact fails as a matter of law because Plaintiff can legally prove both consumer harm and damages under federal and state law with respect to Defendant's unlawful debt collection. Accordingly, Defendant's motion should be denied because Plaintiff's has presented a legal basis with factual support for several claims pursuant to the Fair Debt Collection Practices Act (hereinafter "FDCPA"), *15 U.S.C. §1692, et seq.*

Additionally, Defendant does not understand the implications of the Supreme Court's June 12 ruling in *Henson*, i.e., this narrow opinion held that a debt buyer is not subject to the FDCPA as an entity regularly collecting debts "owed or due another," leaving intact the alternative approach of showing that a debt buyer qualifies as a debt collector under the FDCPA because the "principal purpose" of its business is the collection of debts.  Here, the "principal purpose" of Defendant's business is the collection of debts, i.e., it does not exist for any other purpose.  Defendant is not a bank and it does not extend credit.  Moreover, Defendant is

1

registered as a "Collection Agency" in the State of Utah. *See Exhibit "G", State of Utah, Division of Corporations and Commercial Code.* Therefore, the FDCPA governs its business practices.

Although the Supreme Court concluded that debt buyers are not debt collectors under the FDCPA's second definition of a debt collector that "regularly collects . . . debts owed or due . . . another," debt buyers can still fall under the FDCPA definition of debt collector if their "principal purpose . . . is the collection of any debts." These are separate and distinct definitions of debt collector. *See Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204, 1208 (9th Cir. 2013). An entity meeting either one of the two definitions qualifies as a debt collector. *See Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 405 (3d Cir.2000). Based on the foregoing, the recent *Henson* case does not prohibit Plaintiff's claim as Defendant is a registered collection agency and its "principal" and only purpose is the collection of consumer debt.

The situation involving what took place with respect to the collection of this debt is not as complicated as Defendant would like to make it out to be, and an individual does not need a legal degree in order to understand the mechanics. The truth is that it is a story, when told accurately, possesses a simplicity in its explanation that could be grasped by almost anyone. However, Defendant has tried to paint the situation in confusing and contradictory images, at least when such a picture works in its favor.

## I.    **INTRODUCTION**

Plaintiff's Complaint arises out of Defendant's unlawful attempt to collect on a purported delinquent Synchrony Bank/CareCredit account that allegedly belonged to Mr. Chenault. As stated in Plaintiff's Complaint, Defendant filed a lawsuit against him on December 27, 2015 in the Philadelphia Municipal Court claiming that he owed $3,685.11. Despite the Local Rules

2

governing the Philadelphia Municipal Court and good legal practice, Defendant's lawsuit was completely devoid of adequate documentation evidencing this alleged debt. Therefore, when he became aware of the lawsuit, Mr. Chenault immediately challenged the validity of the debt and requested that his case be listed for trial before a Philadelphia Municipal Court Judge. At the time of trial, Defendant's inadequate documentary evidence failed to persuade the Philadelphia Municipal Court that Mr. Chenault owed Defendant any money. Accordingly, judgment was entered by the Philadelphia Municipal Court in favor of Mr. Chenault on June 23, 2016 and Defendant did not file an appeal to the Court of Common Pleas, Philadelphia County within thirty days. Therefore, the judgment became non-appealable.

Now, Defendant claims to this Honorable Court that it did nothing wrong when it attempted to collect this debt. To the contrary, Plaintiff can prove that Defendant misrepresented the amount of the debt, attempted to collect unauthorized interest and attempted to collect a debt that was not owed all of which are violations of the FDCPA.

First, Plaintiff advised Defendant when he was first sued for this debt that he did not open the account and/or did not purchase any services on the account. *Please see letter dated March 15, 2016 attached hereto as Exhibit "A".* Additionally, Plaintiff submits to this Court that he neither opened this account nor purchased any services on this account. *Please see Affidavit of Ronald Chenault dated June 26, 2017 attached hereto as Exhibit "B".*

Second, Defendant does not have a signed application from Plaintiff that opened the credit account and cannot even tell anyone what was purchased on the account, i.e., it is still a mystery to both parties. *Please see Defendant's Response to Plaintiff's Request for Admissions attached hereto as Exhibit "C".* Additionally, Defendant does not have proof that it was permitted to sue Plaintiff for interest on his alleged consumer debt.

3

Third, when Defendant purchased this debt from the original creditor said purchase was made without any representation or warranty from the seller of the debt, i.e., "are not true and correct in all material respects." *Please see Forward Flow Receivables Purchase Agreement, page 7, Article III, Section 3.1(a) "Representations and Warranties" attached hereto as Exhibit "D".* Moreover, the "Data Accuracy" is only warrantied "[T]o the best of seller's knowledge …". *Please see Exhibit "D", page 9, Article IV, Section 4.1(h) "Data Accuracy".* Accordingly, Defendant cannot prove that it sued Plaintiff for the correct amount.

Finally, Plaintiff allegedly had a "CareCredit" account. On December 10, 2013, the Consumer Financial Protection Bureau ordered "GE CareCredit" to refund $34.1 million for deceptive health-care credit card enrollment. *Please see Exhibit "E".* That is why Plaintiff can prevail on this claim, i.e., Plaintiff will testify in federal court that he did not open this "CareCredit" account. Rather, he was likely the victim of a deceptive credit card enrollment tactic and or was charged for services that he never received.

Based on the foregoing, what is significant about Defendant's current motion is that it must think that it did nothing wrong with respect to the collection of this alleged debt under either federal or state law. Be that as it may, it is respectfully submitted that Defendant's motion is legally erroneous and that the factual and legal bases for Plaintiff's claims are straightforward under both federal and state law. Moreover, Plaintiff's claims and supporting facts demonstrate that Defendant's conduct is highly unlawful under both federal and state law.

Accordingly, Plaintiff submits that Defendant's motion should be denied because it should be unlawful under the FDCPA to attempt to collect a debt from a consumer when the debt collector cannot even prove that: (1) the consumer actually authorized the opening of the credit

account that created the debt; and, (2) what was purchased on the credit account that created the alleged debt.

## II.     **FACTUAL BACKGROUND**

This lawsuit is about a debt buyer, Defendant Credit Corp Solutions, Inc. that purchases for "pennies on the dollar" debts that it cannot prove when forced to go to trial. Due to its failure to prove that Plaintiff owed it any money when it sued him in the Philadelphia Municipal Court, Defendant has violated both federal and state law. Additionally, Plaintiff submits that debt buyers like this Defendant clog court systems throughout the United States with lawsuits based on inadequate and incomplete information. *Andrew Martin, "Automated Debt-Collection Lawsuits Engulf Courts,"* N.Y. Times, July 12, 2010; *Richard J. Dalton, Jr., "Haunted by 'Zombie Debt',"* Newsday, February 8, 2008. Debt buyers like Defendant purchase debt with little to no documentation of actual amounts owed, the terms of account agreements, or meaningful identification of account holders: "The problems resulting from this overall lack of proof or accuracy are myriad…". *Peter Holland, "Defending Junk Debt Buyer Lawsuits,"* Clearinghouse Review, Vol. 46, No. 1-2, May-June 2012.

Defendant failed to prove its claim against Plaintiff because it could not provide their counsel with sufficient documentary evidence of any debt owed by Plaintiff. Defendant does not bring a witness to Court to testify. Rather, it attempts to admit "business records" into evidence under Rule 121 of the Philadelphia Municipal Court which permits the admission of "business records" into evidence without a witness if the documents are sent to the other side at least ten days before trial.

Here, Defendants had six months to produce sufficient proof that Plaintiff owed a debt and could not do it. There is no signed contract. There are no documents with Plaintiff's

5

signature in existence for this alleged debt. Defendant does not even know what was purchased on the credit account. For example, a document should have been generated "when" the credit card in question was "actually used". That would have been the charge slip generated by the merchant at the point of sale and signed by Plaintiff at the point of sale. That proof does not exist. That would be an indication of assent to actual transaction charges that form the basis of the alleged debt. Plaintiff's signature on either a charge slip or a credit application would be persuasive evidence that a debt was incurred on the identified account with the original creditor, and that Plaintiff did, in fact, effect a transaction on the subject credit card account. All Defendant submits to this Court as proof of the alleged debt are monthly credit card statements. While there is no case law on this point, monthly credit card statements are clearly not sufficient to satisfy this evidentiary requirement. Such statements are merely indications of what the original creditor believed to have been the usage and charges accrued on the account for a name and an address. However, they are not documents or records authenticated by Plaintiff's signature or other mark of assent. If a signed application or other indication of assent actually existed, Plaintiff would never have filed this lawsuit against Defendant.

Once again, just like Defendant does not understand the Supreme Court's ruling in *Henson*, it does not understand that Plaintiff's FDCPA claims revolve around his assertion that he never borrowed the money in the first place, i.e., he never incurred a debt. Contrary to Defendant's assertions, Plaintiff's FDCPA claim against Defendant is that it attempted to collect a debt from him that he did not owe. Plaintiff submits to the Court that Defendant has broken the law and it never should have sued Defendant in the first place and/or should have dismissed the underlying lawsuit because there is no proof that Plaintiff either opened this account or authorized the purchase of any goods or services on the account.

6

III.   **LEGAL ARGUMENT**

A.   **STANDARD OF REVIEW**

A summary judgment motion "is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Parker v. Pressler & Pressler, LLP*, 650 F.Supp.2d 326, 329 (D.N.J. 2009) (quoting Fed. R. Civ. P. 56(c)). A district court "must view the facts in the light most favorable to… the non-moving party, and must accordingly draw all reasonable inferences that support [its] claims." *Parker*, 650 F.Supp.2d at 329 (*citing Gray v. York Newspapers*, 957 F.2d 1070, 1078 (3d Cir. 1992)).

The district court "is not permitted to weigh evidence or make credibility determinations…and may not grant [a party's] motion if there is evidence sufficient to allow a reasonable jury to return a verdict for" the non-moving party. *Parker*, 650 F.Supp.2d at 329 (*quoting Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (other quotations omitted)). A non-moving party "may not rest upon mere allegations or denials, nor may [it] defeat the motion by presenting a mere scintilla of evidence in support of [its] position; instead, [the non-moving party] must, 'by affidavits or as otherwise provided in [Rule 56],' set forth 'specific facts showing that there is a genuine issue for trial.'" *Parker*, 650 F.Supp.2d at 329-330 (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 11 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 & 252 (1986)).

B.   **PLAINTIFF'S FDCPA CLAIMS ARE NOT BARRED BY THE RECENT SUPREME COURT RULING IN *HENSON***

In *Henson v. Santander Consumer USA Inc.*, __ U.S. __, 2017 WL 2507342 (June 12, 2017), the Supreme Court issued a unanimous decision authored by Justice Gorsuch holding that Santander was not a debt collector under the Fair Debt Collection Practices Act's (FDCPA's)

second definition of debt collector. This narrow opinion held that a debt buyer is not subject to the FDCPA as an entity regularly collecting debts "owed or due another," leaving intact the alternative approach of showing that a debt buyer qualifies as a debt collector under the FDCPA because the "principal purpose" of its business is the collection of debts.

In *Henson*, the class of plaintiffs originally obtained car loans from CitiFinancial Auto. When they defaulted, CitiFinancial repossessed the vehicles, sold them, and hired Santander as a servicer to collect the alleged deficiency balances. The plaintiffs were part of a class action against CitiFinancial Auto related to its repossession practices. This is significant because Santander is a commercial bank.

After preliminary approval of the class settlement agreement, whose relief included waiver of plaintiffs' alleged deficiency balances, Santander purchased plaintiffs' accounts as part of a $3.55 billion portfolio of loan receivables. Despite allegedly knowing about the waiver of deficiency balances included in the class settlement between plaintiffs and CitiFinancial Auto, Santander attempted to collect the alleged deficiency balances. Plaintiffs' brought an FDCPA lawsuit alleging misrepresentation of the amount owed and authority to collect the debt.

The FDCPA defines a debt collector (in part) as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . . . [15 U.S.C. 1692A(6)] .

The question before the Supreme Court was whether Santander qualified as a debt collector under the second definition – in other words, whether Santander "regularly collects . . . debts owed or due . . . another." Rejecting plaintiffs' argument that "owed" encompasses debts previously "owed . . . another" based on both an analysis of grammar and the language in other sections of the statute, the Court held that a company collecting debts that it purchased is not a debt collector under the FDCPA's second definition of debt collector because the debts are now

8

owed to it rather than being "owed or due . . . another."

The Supreme Court did not address the first definition of debt collector, noting that: "[T]he parties briefly allude to another statutory definition of the term "debt collector"—one that encompasses those engaged "in any business the principal purpose of which is the collection of any debts." § 1692a(6). But the parties haven't much litigated that alternative definition and in granting certiorari we didn't agree to address it either." [*Henson* at *3]

The district court at 2014 WL 1806915 at *4 (D. Md. May 6, 2014) and the Fourth Circuit at 817 F.3d 131, 137 (4th Cir. 2016) had both summarily concluded that Santander was not a "principal purpose" debt collector. Santander claimed that its principal purpose was loan origination. [*Henson* at *7]. **As such, it is different from debt buyers that are primarily or exclusively engaged in the purchase and collection of defaulted debts. Plaintiff submits to the Court that Defendant is either primarily or exclusively engaged in the purchase and collection of defaulted debts. From Defendant's website, "Credit Corp Solutions is a receivables management company that purchases and collects consumer debt …".** *Please see Defendant's webpage attached hereto as Exhibit "F".* **In other words, Defendant is is a debt buyer and our business a/k/a "principal purpose" is the collection of purchased consumer debt. Moreover, Defendant is registered as a "Collection Agency" in the State of Utah.** *See Exhibit "G", State of Utah, Division of Corporations and Commercial Code.*

The Supreme Court also rejected the argument that because the FDCPA at 15 U.S.C. 1692a(6)(F)(iii) specifically excludes persons who collect non-defaulted debt from the definition of debt collector, the term debt collector must include those who regularly attempt to collect debts obtained after default. Whether or not the debt is in default is relevant to applying the exclusions from the debt collector definition in 15 U.S.C. § 1692a(6)(F)(iii), but the Supreme Court cautioned that "it doesn't necessarily follow that the definition [of debt collector] must include anyone who regularly collects debts acquired after default." [*Henson* at *6]

Although the Supreme Court concluded that debt buyers are not debt collectors under the FDCPA's second definition of a debt collector that "regularly collects . . . debts owed or due . . . another," debt buyers can still fall under the FDCPA definition of debt collector if their "principal purpose . . . is the collection of any debts." These are separate and distinct definitions of debt collector. *See Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204, 1208 (9th Cir. 2013). An entity meeting either one of the two definitions qualifies as a debt collector. *See Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 405 (3d Cir.2000).

Both Plaintiff's Complaint and the facts currently before the Court provide a factual basis to support the "principal purpose" allegation. *See Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204, 1209 (9th Cir. 2013). Here, debt collection is Defendant's only business, which makes it indisputable that it is the debt buyer's principal business. Moreover, Defendant is registered as a "Collection Agency" with the State of Utah. A Third Circuit decision holds that an admission by the defendant that it "exists solely for the purpose of holding claims for delinquent taxes and municipal obligations" showed that its principal purpose was the collection of debts. *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 404 n.27 (3d Cir.2000). On the other hand, at least one court has held that simply alleging that debt collection makes up "some part" of the defendant's business is insufficient to state a claim under principal purpose. *Schlegel v. Wells Fargo Bank, N.A.*, 720 F.3d 1204, 1209 (9th Cir. 2013). However, Defendant's "principal purpose" is the collection of debt. Moreover, Defendant cannot claim that debt collection is just a part of its business. Rather, debt collection is its only business. Accordingly, the *Henson* decision does not prohibit Plaintiff's FDCPA claims against Defendant.

## C.     PLAINTIFF'S FDCPA CLAIMS ARE NOT BARRED AS A MATTER OF LAW

Congress enacted the FDCPA to address exactly the sort of collection abuse that is currently before this Court, i.e., a debt collector suing someone who does not owe the

money, filing suit without sufficient proof of the debt, misstating the amount owed and suing for interest without appropriate legal authority.

In enacting the FDCPA, Congress found "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.SC. § 1692(a). The FDCPA's purpose is "to eliminate abusive debt collection practices by debt collectors, [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 318-319 (8th Cir. 2004) (quoting 15 U.S.C. § 1692(e)). "The FDCPA provides a [statutory] remedy for consumers who have been subjected to abusive, deceptive, or unfair debt collection practices by debt collectors." *Piper v. Portnoff Law Assoc., Ltd.*, 396 F.3d 227, 232 (3rd Cir. 2005). The FDCPA is a remedial statute, and courts are to construe its language broadly to effect its purposes. *Brown v. Card Services Center*, 446 F.3d 450, 453 (3rd Cir. 2006). Finally, the FDCPA is a strict liability statute to the extent that it imposes liability without proof of intentional violation. *Allen v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3rd Cir. 2011).

Defendant and its attorneys in the underlying Philadelphia Municipal Court lawsuit are debt collectors under the FDCPA and their conduct as such is regulated by the FDCPA. *Heintz v. Jenkins*, 514 U.S. 291, (1995). The FDCPA also applies to litigation activities. *Id.* The definition of a consumer under the FDCPA includes "any natural person obligated or **allegedly** obligated to pay any debt. 15 U.S.C. § 1692a(3) (emphasis added). Additionally, the legislative history of the FDCPA clearly demonstrates that Congress intended to protect people wrongfully sued by debt collectors because of mistaken identity and or debts that were not actually owed. *See Senate Report 95-382* at 4 (1997), reprinted in 1977 U.S.C.C.A.N. 1695, 1699 (noting that one purpose of the FDCPA is to eliminate the recurring problem of debt collectors **dunning the wrong person** or attempting to collect debts that the consumer has already paid) (emphasis added). More pointedly, *House Report 95-131* observed, "This bill also protects people **who do**

11

**not owe money at all. In the collector's zeal, collection efforts are often aimed at the wrong person either because of mistaken identity or mistaken facts.** This bill will make collectors behave responsibly towards people with whom they deal" (emphasis added). *H.R. Rep. No. 131, 95th Cong. 1st Sess. 8.*

Ignoring the clear command of Congress as Defendant advocates would allow unscrupulous debt collectors and particularly buyers of junk debt such as this Defendant who cannot verify the accuracy of the debt to file lawsuits with impunity on the chance that the named defendant will simply pay the alleged debt under the threat of a judgment or levy. Indeed the facts of this case clearly demonstrate the unscrupulous business practices that Congress was attempting to combat---filing a lawsuit with insufficient proof of the debt and/or against a person who does not owe any money!

Any "unfair or unconscionable means to collect or attempt to collect any debt" by a debt collector violates the FDCPA. 15 U.S.C. § 1692f. Additionally, §1692e[2] says that Defendant cannot "misrepresent the amount, character or status of the debt". Federal Courts must evaluate any potential FDCPA violation under an unsophisticated or least sophisticated consumer standard. *Taylor v. Perrin, Landry deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir.1997). That is, in determining whether the debt collector's actions are deceptive or unfair under the FDCPA the court must assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors. This standard serves the purpose of protecting all consumers, "including the inexperienced, the untrained and the credulous, from deceptive debt collection practices[.]" *Id.* At the same time a court does not consider the debtor as tied to the "very last rung on the [intelligence or] sophistication ladder." *Id.* (internal quotation marks omitted).

Here, Plaintiff is a senior citizen who is partially disabled, i.e., he is legally blind. When he received Defendant's lawsuit filed against him in Philadelphia Municipal Court he immediately hired a lawyer because he had no clue what the lawsuit was about, i.e., he had not

12

opened a credit account with CareCredit and had not received any services. It has been determined that legal pleadings can violate the FDCPA. *See Marquez, et al. v. Weinstein, Pinson, P.S., et al.*, No. 1:2014cv – Document 65 (N.D. Ill. 2015). In that case, it was determined that there is no clear FDCPA exemption for statements in legal pleadings, i.e., they can contain false or misleading statements. *Id.* at 6.

Additionally, misstating the amount a consumer owes by a mere penny may constitute a violation of the Fair Debt Collection Practices Act. In the case of *Sunga v. Rees Broome, P.C.*, 2010 U.S. Dist. LEXIS 81970 (August 12, 2010), a Federal judge in Alexandria denied a debt collector's motion to dismiss causes of action under the FDCPA. That Court found that a plaintiff adequately alleged several causes of action, including a claim that the debt collector made a false representation in an attempt to collect a debt when it allegedly misstated the amount owed by as little as a penny. Defendant claims that Plaintiff owed a debt but cannot tell anyone what was purchased. Therefore, how can Defendant ever prove that it sued Plaintiff for the correct amount.

Finally, as to FDCPA violations, a debt collector may not collect any interest or fee not authorized by the agreement or by law. 15 U.S.C. § 1692e. Here, Defendant does not have an agreement demonstrating that Plaintiff agreed to pay any interest to the original creditor. Defendant must have proof that Plaintiff agreed to pay interest to the original creditor. Defendant sued Plaintiff for interest in the amount of $372.11 without any proof that same was authorized by any agreement that was assented to by Plaintiff.

Plaintiff has presented sufficient prove of numerous FDCPA violations to this Court. First, Plaintiff avers that he never borrowed any money and/or received any services on the "CareCredit" account. Defendant cannot prove that Plaintiff borrowed any money and/or received any services on the "CareCredit" Account. Also, Defendant cannot prove that Plaintiff even opened up the credit account in question. Moreover, Defendant cannot even prove what

13

was purchased on the aforementioned account. As to Plaintiff allegedly making one payment towards this alleged debt, Plaintiff would submit that if any payment was even made, by him, same could have easily been made in error by him because he is partially blind. However, Plaintiff can prove that the alleged debt was purchased without any warranty as to its authenticity from the original creditor. The foregoing demonstrates an "unfair or unconscionable means to collect or attempt to collect any debt" by a debt collector which violates the FDCPA. 15 U.S.C. § 1692f. Second, the foregoing facts when augmented by the CFPB consent order involving "CareCredit" accounts and the purchase agreement between Defendant and the original creditor create liability in the legal pleadings that were filed under the FDCPA at §1692e[2]. Finally, Defendant can never prove that it sued Plaintiff for the correct amount and/or that it was authorized to collect interest which are violations of the FDCPA under §1692e.

Additionally, Plaintiff submits to the Court that FRCP 15 permits either him or this Court at any time to amend his initial pleading to conform to the facts that are currently in evidence before this Court when it decides this motion.

## D.   NOT ALL OF PLAINTIFF'S REMAINING CLAIMS ARE BARRED AS A MATTER OF LAW

If the Court finds that Defendant violated the FDCPA, Plaintiff's remaining claims under the FCEUA and the UTPCPL would survive this motion.

While Plaintiff does not agree with Defendant's assertion that all statements made in the collection of this debt were true, Plaintiff does agree that since Defendant did not report this alleged debt to the credit bureaus there was no defamation.

As to Plaintiff's abuse of process claim, Plaintiff submits to the Court that junk debt buyers like this Defendant abuse the legal system every single day in Philadelphia Municipal Court by annually filing thousands of lawsuits that are legally insufficient and are only filed to obtain default judgments. Plaintiff simply requests that the Court apply the "Duck Test", i.e., "If

14

it looks like a duck, swims like a duck, and quacks like a duck, then it probably is a duck."
Accordingly, Plaintiff's abuse of process should be permitted to proceed.

IV.     **CONCLUSION**

Based on the foregoing, Plaintiff requests that this Honorable Court deny Defendant's
Motion for Summary Judgment because its legal arguments are unsupported by current federal and
state law and the facts currently before this Honorable Court.

In sum, Defendant has presented a series of classic logical fallacies to this Court. First, the
"Strawman" argument. Defendant his simply misrepresented Plaintiff's FDCPA claims to make
them easier to attack. Second, the Court has been presented with the "black-or-white"
argument, i.e., where two alternatives are presented as the only possibilities, when in fact more
possibilities exist. Third, Defendant also relies on "appeal to authority", i.e., Plaintiff owes the
debt because there is "proof" and it must be true. Finally, Defendant's motion contains "personal
incredulity", i.e., because it finds Plaintiff's claims difficult to understand that they cannot be true.
Four separate logical fallacies have been presented to this Court in Defendant's motion.

Whether Defendant intended to violate the FDCPA is not important: "The FDCPA is a
strict liability statute to the extent it imposes liability without proof of an intentional violation."
*Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3rd Cir. 2011).

Under the circumstances of this case, to reward Defendant for failing to have procedures
in place that safeguard innocent people from wrongfully being sued would contravene the spirit of
the FDCPA and subvert the expressed stated goal of Congress in enacting the FDCPA, that is
protecting the American public from abusive and deceptive debt collection practices. *Senate &
House Reports* supra.

Once, while doing The New York Times Crossword Puzzle, Plaintiff's Counsel saw a
clue attributable to the late, great movie critic, Roger Ebert. Mr. Ebert, while once reviewing a

15

very bad movie, stated, "How far can my thumb go down?"  Plaintiff respectfully submits to this

Honorable Court, serving as the legal critic of the motions that come before it, should also ask

that very same question when ruling on Defendant's motion.

Respectfully submitted,

LAW OFFICE OF MARC R. GORDON, P.C.

BY: _____

06/30/17

CHRISTOPHER S. FROBA
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I, Christopher S. Froba, Esquire, hereby certify that Plaintiff's Opposition to Defendant's Motion for Summary Judgment was delivered to the below Counsel via PDF attachment to email, as well as by electronic service via this District Court's ECF system.

Richard Perr, Esq.
rperr@finemanlawfirm.com
Attorney for Defendant

Alexander Brown, Esq.
abrown@finemanlawfirm.com
Attorney for Defendant

CHRISTOPHER S. FROBA

06/30/17